# EXHIBIT D

**Complaint**

**O'CONNOR, PARSONS, LANE & NOBLE, LLC**
Gregory B. Noble, Esq. (#017601998)
R. Daniel Bause, Esq. (#019122011)
Robert A. Ballard, III, Esq. (#087192014)
959 South Springfield Avenue, 2nd Floor
Springfield, New Jersey 07081
Phone: 908-928-9200
Attorneys for Plaintiff

| | |
|---|---|
| AUGUSTO PENARANDA,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN NATIONAL RED CROSS; CHRISTINE HODDE, both individually and in her managerial and/or supervisory capacity; ROSEMARY TARAVELLA, both individually and in her managerial and/or supervisory capacity; JANE DOE I-V (these names being fictitious as their present identities are unknown); JOHN DOE I-V (these names being fictitious as their present identities are unknown); XYZ CORPORATION I-V (these names being fictitious as their present identities are unknown),<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: UNION COUNTY<br>DOCKET NO:<br><br>Civil Action<br><br>**COMPLAINT AND JURY DEMAND** |

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

1. Plaintiff Augusto Penaranda ("plaintiff" or "Mr. Penaranda") resides at 98 Reservoir Road, Apt. 1B, Jersey City, New Jersey 07307 and at all times relevant hereto was employed by defendants.

2. Defendant American National Red Cross ("Red Cross" or the "Company") is an organization with the principal business address of 431 18th Street,

NW, Washington, District of Columbia 20006 which had the plaintiff in its employ during the relevant time periods herein.

3. Defendant Christine Hodde ("Ms. Hodde") resides at 35 Oxbow Lane, Summit, New Jersey 07901 and at all times relevant hereto was an employee of the Red Cross and/or a member of management and/or in a supervisory position and had supervisory authority over plaintiff. Ms. Hodde aided and abetted the Red Cross' unlawful conduct and/or was involved in the decision to terminate plaintiff and the effectuation of same.

4. Defendant Rosemary Taravella ("Ms. Taravella") resides at 7 Rolling Hills Way, Port Murray, New Jersey 07865 and at all times relevant hereto was an employee of the Red Cross and/or a member of management and/or in a supervisory position and had supervisory authority over plaintiff. Ms. Taravella aided and abetted the Red Cross' unlawful conduct and/or was involved in the decision to terminate plaintiff and the effectuation of same.

5. At all times relevant hereto, the defendants Jane Doe I-V and John Doe I-V are fictitious names used to identify those individuals which names are presently unknown that engaged in wrongful acts outlined herein and their identities are presently unknown.

6. At all times relevant hereto, the defendants XYZ Corporation I-V are fictitious names used to identify those corporations which names are presently unknown but include corporations incorporated under the laws of the State of New Jersey and/or other states and had plaintiff under their employ.

7. Mr. Penaranda is a Hispanic man of Peruvian descent.

8. Mr. Penaranda commenced employment with Red Cross on or about August 14, 2017.

9. He most recently served as Chief External Affairs Officer for the New Jersey Region out of the Princeton, New Jersey office.

10. Mr. Penaranda reported to and/or was junior to, amongst other individuals, Executive Director Christie Hodde and Chief Executive Officer Rosie Taravella, who are both non-Hispanic, during all or part of the relevant time periods herein.

11. Mr. Penaranda was hired by Ana Montero, who was, upon information and belief, the first Hispanic individual in a leadership role in the New Jersey Region.

12. In fact, it was readily apparent that Ms. Montero sought to increase diversity in the New Jersey Region, which included the hiring of plaintiff in or about August 2017.

13. During the first few weeks of plaintiff's employment, three hurricanes and several other natural disasters occurred, causing Mr. Penaranda to hit the ground running in his new position with minimal training or guidance.

14. In fact, these disasters forced Ms. Montero into a more active role that left him without direct guidance; however, Mr. Penaranda still set out to accomplish the strategic plan that had been instilled at his office.

15. Mr. Penaranda's actions in the wake of these 2017 disasters led him to multiple commendations.

16. Furthermore, Mr. Penaranda also set out in taking the lead on various initiatives throughout New Jersey and the surrounding area.

17. However, as plaintiff continued working with Ms. Montero, in or about May 2018 she informed him that she was being deployed to Puerto Rico after pressure from the Red Cross.

18. Upon this deployment, Ms. Montero was replaced on an interim basis by Susan Rounds, who worked with plaintiff and also lauded his efforts in his position.

19. Despite his accomplishments, Mr. Penaranda became concerned about the negative treatment of minorities in the New Jersey Region.

20. The first such occasion occurred during a board meeting led by Ms. Hodde where plaintiff was the only minority employee present.

21. During the course of this meeting, Ms. Hodde targeted Mr. Penaranda for his attire even though he was similarly dressed as the other non-minority employees present, singling him out and threatening him that he would "dress appropriately" in the next meeting.

22. In a subsequent meeting where he was once again the only minority, Ms. Hodde chastised Mr. Penaranda in front of the entire Executive Board for an alleged grammatical error that did not actually exist, unfairly humiliating him in front of his colleagues.

23. Ms. Rounds was present for this meeting and had a shocked expression during Ms. Hodde's criticism.

24. Reasonably feeling as if the issues he was having at work and with Ms. Hodde were on the basis of racial discriminatory bias, plaintiff filed a discrimination complaint against Ms. Hodde with Human Resources in or about March 2018.

25. Human Resources representative Angela Pine indicated that she would investigate plaintiff's claims; however, Ms. Hodde instead continued to undermine Mr.

Penaranda, including suggesting to other Executive Directors that they not comply with any of his requests.

26. On or about June 25, 2018, while plaintiff's complaint remained pending, Ms. Taravella became the CEO of the New Jersey Region.

27. Almost immediately upon taking over as CEO, Ms. Taravella began treating plaintiff in a disparate fashion.

28. On or about June 26, 2018, plaintiff attended a meeting in Fairfield, New Jersey where the topics included Communications and Diversity where Ms. Taravella attended.

29. In fact, there was a presentation on diversity challenges within the Red Cross which referred to it as an "Old White Organization" that did not reflect the clients it served and the need for change on that front.

30. Mr. Penaranda was very vocal during this meeting in questioning the lack of diversity within the organization, questioning the lack of diversity in leadership and seeking a Latino Initiative with Hispanic and Latino representation.

31. Following this meeting, Ms. Taravella began a campaign of negative harassment, including disparately disciplining and citing him for things that non-minority employees were not.

32. Nonetheless, plaintiff continued his diligent and effective work for the Red Cross.

33. In or about August 2018, plaintiff was on a scheduled vacation to France but continued to make efforts to check-in with the Red Cross.

34. However, due to technical issues preventing him from calling into meetings, plaintiff discovered that other Executive Directors were criticizing him and his staff although he was on a pre-approved vacation.

35. Nonetheless, Ms. Taravella called plaintiff unprofessional and out-of-line due to his response to an email while on vacation and thereafter issued him a write-up although he had done nothing that warranted same.

36. Thereafter, and although plaintiff continued to accomplish great things in his position, Ms. Taravella gave Mr. Penaranda a negative annual review after allegedly marking up an initial strong review by Ms. Rounds.

37. In or about this same timeframe in July/August 2018, plaintiff was contacted by Ms. Pine concerning the investigation into his complaint with a finding of no wrongdoing.

38. Although Mr. Penaranda requested information about the investigation and its results, such efforts were rebuffed.

39. However, upon information and belief, Ms. Montero, who was plaintiff's supervisor, was apparently not contacted as to these complaints.

40. During this same timeframe, Mr. Penaranda also made efforts on behalf of two (2) African American employees to maintain their employment in the Red Cross, including because there was a staggering lack of diversity in the division they were being let go from.

41. However, and despite the fact there were other positions that these individuals could potentially be placed, plaintiff's efforts were shutdown and these individuals were terminated by the Red Cross.

42. On or about September 5, 2018, plaintiff learned that he was being considered as the lead for Public Affairs if emergency mode for Hurricane Florence be triggered.

43. In fact, this role was raised in a phone call with Elizabeth Briand on or about September 7, 2018, with a phone call being scheduled with Disaster Director Rodric Bowman being mentioned and scheduled to address same.

44. However, on or about September 10, 2018, Mr. Penaranda discovered that Ms. Taravella had instead assigned this leadership role to another Executive Director because plaintiff had allegedly missed a meeting he was not apprised of.

45. That next day, on or about September 11, 2018, Ms. Taravella angrily confronted plaintiff and confusingly accused him "blow[ing] off [his] responsibility" in front of staff and volunteers for missing the meeting, also threatening to go to HR.

46. Thereafter, on or about September 19, 2018, Ms. Taravella terminated plaintiff's employment with the Red Cross.

47. During the course of this meeting, Mr. Penaranda raised his discrimination complaint but was met with silence by Ms. Taravella and Ms. Pine, who was also in the meeting.

48. In fact, during the course of this meeting, Ms. Taravella confirmed her discriminatory scheme in admitting to forcing Ms. Montero out and thereafter terminating Mr. Penaranda upon taking over.

49. Furthermore, plaintiff was replaced by a less-qualified Caucasian individual following his termination and another Caucasian individual, Matthew Teter, was also hired after his termination for a leadership role, thus removing all Hispanics from management positions at that time in the New Jersey Region.

50. Lastly, upon information and belief, as of January 2019, there were no Hispanics on the Executive Board of the New Jersey Red Cross and limited minorities in other positions within the State.

## FIRST COUNT

### New Jersey Law Against Discrimination
### Racial and/or National Origin Discrimination

51. Plaintiff repeats and realleges each and every allegation of the within paragraphs of this complaint as if set forth at length herein.

52. Defendant is an "employer" as defined under the LAD.

53. As set forth above, the defendants disparately treated and thereafter terminated plaintiff because of his race and/or national origin, replacing him with a Caucasian individual in the course of a race-centric discriminatory scheme within the New Jersey Region.

54. This racial and/or national origin discrimination violates the LAD.

55. Defendant failed to implement any preventive or remedial measures to protect against racial/national origin discrimination, including, but not limited to:

   a. failure to adequately train supervisory personnel;

   b. failure to institute or implement effective policies or procedures regarding racial and other discrimination and the reporting and investigation of complaints of same;

   c. failure to adequately monitor or supervise the illegal activities and discriminatory actions of supervisory personnel;

   d. failure to provide adequate training to recognize, address, rectify and/or prevent illegal or discriminatory conduct; and

e. failure to adequately rectify, discipline or prevent known discriminatory conduct by supervisory personnel.

56. The conduct engaged in by the defendant constitutes egregious behavior and/or willful indifference by upper management to the rights of plaintiff sufficient to subject defendant to punitive damages under the LAD and Lehmman v. Toys R Us.

57. Plaintiff has been severely injured as a result of such discrimination that he has suffered, and continues to suffer, physical and bodily injuries, severe emotional distress, humiliation, embarrassment, anguish, personal hardship, career and social disruption, psychological and emotional harm, economic losses, loss employment opportunities, and other such damages.

WHEREFORE, plaintiff, Augusto Penaranda, demands judgment against defendants, American National Red Cross; Christine Hodde, both individually and in her managerial and/or supervisory capacity; Rosemary Taravella, both individually and in her managerial and/or supervisory capacity; Jane Doe I-V (these names being fictitious as their present identities are unknown); John Doe I-V (these names being fictitious as their present identities are unknown); XYZ Corporation I-V (these names being fictitious as their present identities are unknown), jointly and severally, for harm suffered as a result of defendants' racial and/or national origin discrimination in violation of the LAD as follows:

(a) full compensation for back pay and benefits with full remuneration, with interest;

(b) full compensation for front pay and benefits with full remuneration, with interest;

(c) compensatory damages;

(d) consequential damages;

(e) punitive damages;

(f) pre-judgment interest;

(g) attorneys' fees with appropriate enhancement under Rendine v. Pantzer, 141 N.J. 292 (1995); and

(h) such other relief as may be available pursuant to the LAD in which this court deems to be just and equitable.

## SECOND COUNT

### New Jersey Law Against Discrimination
### Unlawful Retaliation

58. Plaintiff repeats and realleges each and every allegation of the within paragraphs of this Complaint as if set forth at length herein.

59. As set forth herein, soon after plaintiff made several complaints to management and/or supervisory personnel concerning disparate treatment, harassment and/or discrimination, plaintiff was subjected to continued unwarranted harassment and disparate treatment and was eventually terminated in response to such complaints.

60. Defendant's conduct towards plaintiff, specifically the harassment, disparate treatment and the termination of his employment, constitutes unlawful retaliation in violation of the LAD.

61. The conduct engaged in by the defendant constitutes egregious behavior and/or willful indifference by upper management to the rights of plaintiff sufficient to subject defendant to punitive damages under the LAD and Lehmman v. Toys R Us.

62. Plaintiff has been severally injured as a result of such retaliation that he has suffered, and continues to suffer, physical and bodily injuries, severe emotional distress, humiliation, embarrassment, anguish, personal hardship, career and social disruption, psychological and emotional harm, economic losses, lost employment opportunities, and other such damages.

WHEREFORE, plaintiff, Augusto Penaranda, demands judgment against defendants, American National Red Cross; Christine Hodde, both individually and in her managerial and/or supervisory capacity; Rosemary Taravella, both individually and in her managerial and/or supervisory capacity; Jane Doe I-V (these names being fictitious as their present identities are unknown); John Doe I-V (these names being fictitious as their present identities are unknown); XYZ Corporation I-V (these names being fictitious as their present identities are unknown), jointly and severally, for harm suffered as a result of defendant's unlawful retaliation as follows:

(a) full compensation for back pay and benefits with full remuneration, with interest;

(b) full compensation for front pay and benefits with full remuneration, with interest;

(c) compensatory damages;

(d) consequential damages;

(e) punitive damages;

(f) pre-judgment interest;

(g) attorneys' fees with appropriate enhancement under Rendine v. Pantzer, 141 N.J. 292 (1995); and

(h) such other relief as may be available pursuant to the LAD in which this court deems to be just and equitable.

## THIRD COUNT

### Aiding and Abetting Liability

63. Plaintiff repeats and realleges each and every allegation of the within paragraphs of this complaint as if set forth at length herein.

64. Defendants, by their actions and inactions, condone, and ratified and aided and abetted the discrimination and retaliation perpetrated against plaintiff.

65. Defendants had knowledge that the discrimination and/or retaliation was occurring, had knowledge that it was a violation of the law, and substantially encouraged and/or assisted in same.

66. Said defendants are liable under the LAD for aiding and abetting discrimination and retaliation in violation of the LAD.

67. The conduct engaged in by defendants constitutes egregious behavior and/or willful indifference by upper management by the rights of plaintiff sufficient to subject defendants to punitive damages under the LAD.

68. Plaintiff has been severely injured as a result of such harassment that he has suffered, and continues to suffer, physical and bodily injuries, severe emotional distress, humiliation, embarrassment, anguish, personal hardship, career and social disruption, psychological and emotional harm, economic losses, loss employment opportunities, and other such damages.

WHEREFORE, plaintiff, Augusto Penaranda, demands judgment against defendants, American National Red Cross; Christine Hodde, both individually and in her managerial and/or supervisory capacity; Rosemary Taravella, both individually and

in her managerial and/or supervisory capacity; Jane Doe I-V (these names being fictitious as their present identities are unknown); John Doe I-V (these names being fictitious as their present identities are unknown); XYZ Corporation I-V (these names being fictitious as their present identities are unknown), jointly and severally, for harm suffered as a result of defendants' aiding and abetting as follows:

(a) full compensation for back pay and benefits with full remuneration, with interest;

(b) full compensation for front pay and benefits with full remuneration, with interest;

(c) compensatory damages;

(d) consequential damages;

(e) punitive damages;

(f) pre-judgment interest;

(g) attorneys' fees and costs with appropriate enhancement under Rendine v. Pantzer, 141 N.J. 292 (1995); and

(h) such other relief as may be available pursuant to the LAD in which this court deems to be just and equitable.

O'CONNOR, PARSONS, LANE & NOBLE, LLC
Attorneys for Plaintiff


By: /s/ GREGORY B. NOBLE
GREGORY B. NOBLE

DATED: March 25, 2020

## JURY DEMAND

Plaintiffs demand a trial by jury as to all issues.

O'CONNOR, PARSONS, LANE & NOBLE, LLC
Attorneys for Plaintiff

By:   /s/ GREGORY B. NOBLE
      GREGORY B. NOBLE

DATED:   March 25, 2020

## DESIGNATION OF TRIAL COUNSEL

Please take notice that pursuant to Rule 4:25-4, Gregory B. Noble, Esq. is hereby designated as trial counsel in the within matter.

## CERTIFICATION PURSUANT TO RULE 4:5-1

The undersigned, Gregory B. Noble, certifies on behalf of the plaintiff as follows:

1. I am an attorney admitted to practice law in the State of New Jersey, counsel for the above-named plaintiff in the subject action.

2. The matter in controversy in this case is not, to my knowledge, the subject of any other action pending in any court or pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated.

3. There are no other parties who should be joined in this action that we are aware of at the present time.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

                        O'CONNOR, PARSONS, LANE & NOBLE, LLC
                        Attorneys for Plaintiff

                    By:   /s/ GREGORY B. NOBLE
                           GREGORY B. NOBLE

DATED: March 25, 2020